34013.   BRUSNIGHAN *v.* THE STATE.
34014.   ROSS *v.* THE STATE.

DECIDED JUNE 20, 1952.

*Paul Cadenhead, Andrews, Nall & Sterne, McFarland & Cooper,* for plaintiffs in error.

*Paul Webb, Solicitor-General, Charlie O. Murphy, William Hall,* contra.

CARLISLE, J. ■ The true character of a criminal accusation or indictment is not fixed by the denomination of the crime given it by the pleader, but by its allegations; that is to say, the name given the crime which is charged in the accusation or indictment does not characterize the offense, but the nature of the crime charged is to be determined from the description of the crime, that is, from the acts alleged to have been committed which are contrary to the laws of the State. *Camp* v. *State,* 3 *Ga.* 417, 419; *O'Halloran* v. *State,* 31 *Ga.* 206 (1), 208; *Aiken* v. *State,* 90 *Ga.* 452 (16 S. E. 206); *Disharoon* v. *State,* 95 *Ga.* 351 (1) (22 S. E. 698); *Alexander* v. *State,* 122 *Ga.* 174 (50 S. E. 56); *Lipham* v. *State,* 125 *Ga.* 52 (53 S. E. 817); *McKissick* v. *State,* 11 *Ga. App.* 721 (76 S. E. 71); *Sneed* v. *State,* 16 *Ga. App.* 351 (1) (85 S. E. 354); *Lummus* v. *State,* 17 *Ga. App.* 414 (1) (87 S. E. 147); *Edwards* v. *State,* 22 *Ga. App.* 796 (97 S. E. 205); *Moore* v. *State,* 34 *Ga. App.* 182 (129 S. E. 6); *Hughes* v. *Georgia Power Co.,* 65 *Ga. App.* 163, 165 (15 S. E. 2d, 466). The indictment does not allege the section or sections of the Code under which it is drawn, and the defendants' contention and the solicitor's concession that it is drawn under Code §§ 26-4101 and 26-4102 are in no way binding upon the court in its construction of the indictment.

Expunged of surplusage and reduced to its essentials, the indictment alleges: that Mrs. Jenny Falks Salomon was, at the time of the commission of the crime alleged, a clerk in the office

of the Insurance Department of the State of Georgia, duly appointed by the Insurance Commissioner of Georgia; that it was her official duty to have charge of and control and custody of the records, books, and papers of the Insurance Department; that the defendants unlawfully gave Mrs. Salomon $500 and unlawfully promised her a lifetime job with Bankers Life and Casualty Company at a salary of $325 per month for the purpose of influencing her corruptly to act partially in favor of Bankers Life and Casualty Company by wrongfully secreting and removing from the records, books, and papers of the Insurance Department and wrongfully delivering to the defendants copies of letters written by the Insurance Commissioner to insurance commissioners of other States relating to Bankers Life and Casualty Company, replies thereto, transcript of the minutes of a meeting of insurance commissioners held at the Henry Grady Hotel, Atlanta, Georgia, June 18, 1951, which were taken down in shorthand and transcribed by Mrs. Salomon, correspondence between the Insurance Commissioner and the insurance commissioners of Tennessee, Ohio, Alabama, and Florida, indicative of the actions contemplated in those States relative to Bankers Life, which records and papers it was the official duty of Mrs. Salomon, under instructions from the Insurance Commissioner, to keep secret and not to disclose the contents thereof to anyone, including the defendants—contrary to the laws of the State, the good order, peace and dignity thereof.

It is an indispensable element of the crime of bribery, as defined in Code §§ 26-4101 and 26-4102, that the recipient of the "bribe" be the holder of an office of government or of justice, a member of the General Assembly, referee, or arbitrator. *Payne v. State,* 153 *Ga.* 882, 884 (113 S. E. 446); *Taylor v. State,* 174 *Ga.* 52, 55 (162 S. E. 504); *York v. State,* 42 *Ga. App.* 453, 463 (156 S. E. 733).

An examination of the indictment at once narrows the question to whether it is alleged that the defendants bribed the *holder of an office of. government,* there being no intimation that the person "bribed" was the holder of an office of justice, a member of the General Assembly, a referee, or an arbitrator. The indictment alleges that Mrs. Salomon is *"a clerk in the office of*

*the Insurance Department,"* not that she held the office of Clerk of the Insurance Department. The allegation does not import the holder of an office of government. There is clerical personnel, comprising stenographers, typists, secretaries, file clerks, payroll clerks, record clerks, journal clerks, billing clerks, etc., in almost every department and office of government in this State. No play upon or juggling of words is required to determine that the clerical personnel of the offices of government within this State are not holders of the offices of government within the meaning of Code §§ 26-4101 and 26-4102. Such personnel are employees, not officers. The origin of the bribery statutes in Georgia, as will be pointed out in greater detail later, is to be found in the laws of the early nineteenth century. The lawmakers of that day are noted for their language facility. . Had they intended to prohibit the bribing of all employees of the State they had the power and language at their command to do so. They did not so choose; but prohibited venality, "the mortal disease of democracy," to those in whose hands the public weal and fragments of the sovereign power lay, the officers of the State. Statutes of early date are not to be read as mere literary compositions, as they might be read by a man who knows English, but they are to be read in the light of the knowledge of the history which gave rise to the words.

It is true that at another point in the indictment it is alleged that the "bribe" was given to Mrs. Salomon "to influence her official behavior in her said office as clerk in the said Insurance Department." Offices of government are created under constitutional or legislative powers, and in no other way. If an office of government exists, its genesis is to be found in one of two places, in the Constitution of the State or in the statutes of the State. Of these the courts take judicial notice. Among these we find no presently operating provision of the Constitution or statute of the State providing for the creation of the office of Clerk of the Insurance Department of Georgia.

The act of 1912 (Ga. L. 1912, pp. 119, 120) empowering the Insurance Commissioner to appoint a clerk was repealed in 1928 by amendment to the Constitution (Code, § 2-2702). We find no statute since the amendment of 1928 creating the office of Clerk of the Insurance Department, or continuing that

office; yet—and we think this is significant—other offices which were created by the act of 1912 have been continued, i.e., the office of deputy commissioner, and examiner; and new offices created, i. e., the office of investigator (Code, Ann. Supp., § 56-116).

The indictment is insufficient as stating the offense of bribery.

Still, under an application of the rules of law stated above for the determination of the nature of an indictment, the indictment is a sufficient charge against the defendants of the statutory offense set out in Code § 89-9903, if the papers and records which the defendants paid Mrs. Salomon to withdraw from the Insurance Department and to deliver to them were records belonging to any public office within this State.

Code § 89-9903 provides: "If any public officer, or other person, shall steal, embezzle, alter, corrupt, withdraw, falsify, or avoid any record, process, charter, gift, grant, conveyance, or contract; or shall knowingly and wilfully take off, discharge, or conceal any issue, forfeited recognizance, or other forfeiture; or shall forge, deface, or falsify any document or instrument recorded, or any registry, acknowledgment, or certificate; or shall alter, deface, or falsify any minute, document, book, or any proceeding whatever, of, or belonging to any public office within this State; or if any person shall cause or procure any of the offenses aforesaid to be committed, or be in anywise concerned therein, he shall be punished by imprisonment and labor in the penitentiary for not less than two years nor more than 10 years."

In the Eighth Division of the Penal Code of 1833 (Ga. L. 1833, pp. 171-179) the present Code § 89-9903 appeared as section 12, immediately following the two sections on bribery (sections 10 and 11) which are presently codified as Code §§ 26-4101 and 26-4102. The wording of the section as it appeared in the Penal Code of 1833 is as follows:

"If any judge, justice, mayor, alderman, clerk, sheriff, coroner, or other public officer, or *any other person whatsoever*, shall steal, embezzle, alter, corrupt, *withdraw*, falsify, or avoid *any record*, process, charter, gift, grant, conveyance, or contract; or shall knowingly and willingly take off, discharge, or conceal any issue, forfeited recognizance, or other forfeiture; or shall

forge, deface, or falsify any document or instrument recorded, or any registry, acknowledgment, or certificate; or shall alter, deface or falsify any minute, document, book, or any proceeding whatever, *of, or belonging to any public office within this State; or if any person shall cause or procure any of the offenses aforesaid to be committed, or be in anywise concerned therein,* the person so offending, shall be punished by imprisonment and labour in the pentientiary for any time not less than two years, nor longer than ten years." (Italics added.)

This language, along with the two sections on bribery, was incorporated in the Code of 1863 (commonly referred to as the first Code in Georgia), § 4366, and carried forward in the same form in every subsequent Code until the Code of 1895, when this section was separated from the two bribery sections, and the language was changed to read as it does today in the present Code. See Penal Code of 1895, § 280, and §§ 267 and 268; and, for an account of the history of the two bribery sections, see *Payne* v. *State*, 153 *Ga.* 882 (113 S. E. 446).

While Code § 89-9903 states several offenses, it is clear that, in view of the history of the section and the language of the section itself, it was enacted as a protection alone to records, books, papers, etc., belonging to public offices within this State. It was originally codified in the act of 1833 in the eighth division of the Penal Code with "Crimes against Public Justice" and along with crimes dealing with public officers; and while some of the documents named could be either public or private instruments, all of those specified are either public or capable of becoming public records.

The indictment in the present case plainly charges the defendants with having unlawfully paid Mrs. Salomon $500 and promised her a lifetime job to wrongfully secrete and remove records, books, and papers of the Insurance Department of Georgia and to wrongfully deliver them to the defendants. These acts clearly and unquestionably constitute a violation of Code § 89-9903, which prohibits and penalizes *any person's* removal of any record belonging to a public office, as well as prohibiting and penalizing *any person's* causing or procuring such act to be done. And this is true although the indictment does contain some language which would be appropriate in an indictment charging

the offense of bribery. See, in this connection, *Disharoon* v. *State*, supra.

The indictment, however, does not simply charge that the records, books, and papers of the Insurance Department were withdrawn, removed, and delivered by Mrs. Salomon to the defendants, it goes further and specifically denominates what these records, books, and papers consisted of: namely, "copies of letters written by said Insurance Commissioner to insurance commissioners of other states relating to Bankers Life and Casualty Company, and replies thereto; transcript of minutes of meeting of Insurance Commissioners held at the Henry Grady Hotel, Atlanta, Georgia, June 18, 1951, which minutes were taken down in shorthand and transcribed by Jenny Falks Salomon; correspondence between said Insurance Commissioner and the insurance commissioners of Tennessee, Ohio, Alabama, and Florida indicative of what actions relative to Bankers Life and Casualty Company were contemplated in those states; which records and papers it was the official duty of said Jenny Falks Salomon, under instructions given her by said Insurance Commissioner, to keep secret and not to disclose the contents thereof to anyone, including accused"; and the question is, therefore, raised whether such letters and minutes come within the meaning of any record belonging to a public office in this State.

Under the act of 1912 as amended by the act of 1945 (Ga. L. 1912, pp. 119, 121; Ga. L. 1945, p. 443; Code, Ann. Supp., § 56-104), "The Insurance Commissioner may at any time examine into the affairs of any insurance company doing business in this State . . and . . he, his deputy or any examiner authorized by him, may examine under oath the officers and agents of such company and all persons deemed to have material information regarding the company's property or business."

"The office of the Insurance Commissioner shall be deemed a public office and the records, books and papers thereof, on file therein, shall be deemed public records of the State, except as may be provided otherwise herein." Code, § 56-101.

The indictment shows that the papers, letters, and minutes of the meeting of the insurance commissioners, which the defendants hired Mrs. Salomon to secrete and remove from the office of the Insurance Commissioner and to deliver to them,

were concerned with an investigation which the Insurance Commissioner was making of the Bankers Life and Casualty Company, and they were unquestionably such papers of the office of the Insurance Commissioner as to make them public records within the meaning of Code §§ 56-101 and 89-9903; nor does it make these papers less public records within the meaning of those two sections of the Code that the Insurance Commissioner instructed Mrs. Salomon not to disclose their contents. Under Code (Ann. Supp.) § 56-105, the Insurance Commissioner is empowered to withhold any report of an investigation of an insurance company doing business in this State from public inspection for such time, not to exceed 60 days, as he may deem proper; and this court cannot say as matter of law that the documents here in question were not a part of the Insurance Commissioner's investigation, nor that they did not constitute a part of a proposed report.

Under the construction which we have placed upon the indictment, it clearly and plainly, and in compliance with Code § 27-701, states a violation of a statute of this State, namely, Code § 89-9903, and the trial court did not err in overruling the defendants' general demurrers thereto.

2. All the special demurrers were, of course, prepared to strike at the indictment as one charging bribery, and special grounds 2, 3, 4, 5, 6, and 7, which do nothing more than that, are not pertinent to the present discussion.

3. If the documents here in question were public documents, papers, or records, as we have said, then the Insurance Commissioner could not, of course, change their nature by any instructions which he might give Mrs. Salomon; the Insurance Commissioner's instructions to Mrs. Salomon not to disclose the contents did not change their nature, and the crime committed was not her divulgence of the secret contained therein, but the crime consisted in the defendants' causing or procuring her to withdraw them and deliver them to the defendants. The allegations as to the payment of the $500 and the promise of the lifetime job are not surplusage, but constitute a statement of the "procurement" of the crime which is prohibited, and for these reason grounds 8, 9, 10, 11, and 12 are ineffective as demurrers to the indictment.

4. For the same reasons as stated in division 2 of this opinion, the additional demurrer filed on December 3, 1951, was not pertinent.

*Judgments affirmed. Gardner, P.J., and Townsend, J., concur.*